IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARIBEL DE LUNA,                     §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §        Civil Action No. 3:21-CV-01659-N
                                     §
QUICK ON THE DRAW TRUCKING           §
INC., *et al.*,                      §
                                     §
        Defendants.                  §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Georgia-Pacific LLC's ("GP") motion to dismiss [21]. For the reasons below, the Court denies the motion.

## I. ORIGINS OF THE MOTION

This is a negligence case arising out of a trucking accident. GP operates a facility situated on an interstate highway access road. The facility takes deliveries from semi-trailer trucks. According to the complaint,[1] trucks awaiting entry regularly park on the access road in the right-hand lane on GP's instructions for extended periods of time. Pl.'s First Am. Compl. ¶ 17 [12]. On one of these occasions when delivery trucks parked on the access road in this manner, the fatal accident at the center of this case occurred. While Miguel Angel De Luna ("Decedent") was driving a semi-trailer truck in the right-hand lane of the access road, he collided with the rear of one of the stationary trucks parked outside

---

[1] This Court takes the well-pleaded allegations as true for the purpose of the Rule 12(b)(6) motion.

GP's facility. *Id.* ¶ 16. He later died from his injuries. *Id.* Plaintiff Maribel De Luna brought this negligence and wrongful death action individually and on behalf of Decedent's estate against GP. Also named as defendants are the other truck's driver, Darius Ghoston, and his employer Quick on the Draw Trucking, LLC. GP now moves to dismiss the claims against it arguing that it did not owe any duty to Decedent as a matter of law.

## II. Rule 12(b)(6) Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE COURT DENIES THE MOTION

To maintain a negligence claim under Texas law, Plaintiff must show "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021) (quoting *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). GP moves to dismiss De Luna's negligence claim against it on the grounds that De Luna fails to plead facts supporting the existence of a legal duty as a matter of law. As explained more fully below, the Court disagrees.

The Texas Supreme Court has never comprehensively addressed the circumstances under which a property owner owes a legal duty to travelers on a roadway abutting his or her property. But there is abundant authority suggesting that the first premise of GP's motion is correct: property owners do not owe a general duty to insure the safety of nearby travelers. *E.g.*, *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 191 (Tex. App. — San Antonio 1988, writ denied). This is in part because premises liability, the special branch of negligence law dealing with certain elevated duties accompanying property ownership, "emanates from the owner's control over the occupied premises and therefore applies only to hazards existing on those premises." *HNMC, Inc. v. Chan*, 637 S.W.3d 919, 929 (Tex. App. — Houston [14th Dist.] 2021, pet. pending) (en banc) (discussing the general rule that premises liability does not extend to people leaving the property who are injured on public roadways); *Dixon v. Hous. Raceway Park, Inc.*, 874 S.W.2d 760, 762 (Tex. App. — Houston [1st Dist.] 1994, writ denied) (noting that the "duty of a premises

owner or occupier to provide protection arises from control of the premises" and does not involve a duty to insure the safety of travelers on adjacent roads).

A property owner therefore does not generally have a duty to make sure that drivers entering and exiting the property do so safely and drive with due care. For example, there is typically no duty to instruct drivers leaving a property to do so via the safest possible exit, or to optimally design each exit to minimize accidents. *Naumann*, 749 S.W.2d at 192 (holding no duty existed where property owner instructed truck drivers to use an exit that required a routine wide turn causing trucks to temporarily block an oncoming traffic lane). Nor does a property owner hosting an event typically have a duty to direct traffic on nearby public roads. *Dixon*, 874 S.W.2d at 762–63 (holding no duty existed where the plaintiff traveling on abutting roadway collided with a vehicle that was turning into the defendant's property to attend an event). The Court therefore agrees that GP did not owe a duty to protect Decedent from the ordinary dangers of traffic solely on the basis of GP's ownership of nearby property.

However, the above principles do not foreclose the existence of a duty when the property owner's conduct creates a dangerous condition on the roadway. *HNMC, Inc.*, 637 S.W.3d at 929–30; *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 707 (Tex. App. — Fort Worth 1998, pet. denied). In these circumstances, the duty (and potential for negligence liability) is rooted not in the property owner's status as such but on the foreseeable effects of his conduct that reach beyond his property to endanger the people on the roadway. Such cases take on a flavor of ordinary negligence rather than premises liability.

ORDER – PAGE 4

GP argues that the duty arising from creation of a dangerous condition is strictly limited to situations where the property owner releases an inherently dangerous "agency" onto the road. Mot. to Dismiss at 4 [21]. GP's argument relies on language from several Texas appellate decisions stating that a property owner's duty to avoid endangering road travelers is generally limited to when the owner "negligently releases upon the highway 'an agency that becomes dangerous by its very nature once upon the roadway.'" *Dixon*, 874 S.W.2d at 763 (quoting *Naumann*, 749 S.W.2d at 191). But these cases do not require dismissal here. As explained below, it does not appear that the rule is as strict as GP argues, i.e., that the duty arising from a property owner's creation of a dangerous condition on the road is strictly limited to when the owner releases some inherently dangerous agency onto the road.

The only Texas Supreme Court authority the parties cite on this subject states the relevant category of duty in far more general terms. In *Alamo National Bank v. Kraus*, the Texas Supreme Court held that a duty existed in a case involving a building demolition where an unsupported wall fell onto the road causing injuries to travelers. 616 S.W.2d 908 (Tex. 1981). The *Kraus* court stated that the "owner or occupant of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel." *Id.* at 910.

Appellate courts in later cases have declined to apply the duty recognized in *Kraus* to various traffic accidents. Several of those decisions rested at least in part on a recognition that the broad duty recognized in *Kraus* has generally been limited to situations involving the release of a dangerous agency onto the roadway. *See, e.g.*, *Naumann*, 749

ORDER – PAGE 5

S.W.2d at 191; *Dixon*, 874 S.W.2d at 763; *Cabrera v. Spring Ho Festival, Inc.*, 2010 WL 3271729, at *3–4 (Tex. App. — Austin 2010, no pet.) (unpub.); *Huebotter v. Diamond Shamrock Refining Co.*, 1999 WL 1244422, at *2 (Tex. App. — San Antonio 1999, no pet.) (unpub.).

However, other courts have held property owners owed a duty to people on an abutting road when the owner's actions created a hazard on the road in circumstances that do not neatly fit the limitation described above.  For example, Texas courts have held property owners owed a duty to travelers on nearby roads where overgrown vegetation caused accidents in various ways.  *Hamric v. Kan. City S. Ry., Co.*, 718 S.W.2d 916, 918 (Tex. App. — Beaumont 1986, writ ref'd n.r.e.) (applying *Kraus* and holding a duty existed where overgrown vegetation obscured a driver's view of oncoming traffic, causing an accident); *Zapata v. Kariyaparambil*, 1997 WL 566222, at *3 (Tex. App. — Houston [14th Dist.] 1997, no pet.) (unpub.) (holding a duty existed where an overgrown tree obscured a stop sign, causing an accident).  But the growing trees or plants in those cases were not "inherently dangerous," and the existence of a duty was not predicated on such a finding.

Additionally, an en banc Texas appellate court recently held that a duty existed where the negligent configuration of a parking lot across a public street from a hospital foreseeably contributed to a pedestrian being hit by a car while crossing the public street.  *HNMC, Inc.*, 637 S.W.3d at 926–28.[2]  The upshot of these cases is that property owners

_____

[2] While the plaintiff in *HNMC, Inc.* was an employee of the defendant leaving the premises, the court did not rest its analysis on premises liability principles.  The court noted that the parties disputed whether the case was a premises liability or ordinary negligence case, but the court called that issue "inconsequential" to the resolution of the duty questions

sometimes owe a duty to people on an abutting roadway where the owner's activities foreseeably create hazardous physical conditions on the road — and that duty is not always limited to situations involving the release of some inherently dangerous entity onto the roadway.

Here, De Luna alleges that GP's representatives took affirmative actions affecting the conditions on the road by instructing drivers to wait there upon their arrival at the facility. Pl.'s First Am. Compl. ¶ 31. That conduct allegedly caused stationary traffic in an active traffic lane on a road with a speed limit of fifty-five miles per hour — for extended periods of time and on a regular basis. *Id.* ¶¶ 37–39. And eventually, the presence of the stationary vehicles in a high-speed traffic lane allegedly contributed to a fatal accident. As explained below, the Court determines that it is at least plausible from these alleged facts that GP's actions created a condition on the roadway that was sufficiently dangerous to constitute a breach of duty.

The parties devote some space in the briefs to a debate about the extent of the danger posed by the practices alleged here. But the complaint includes factual allegations that, viewed in De Luna's favor, support a reasonable inference that the conditions here were sufficiently dangerous to constitute a breach of the duty not to create a dangerous condition on the roadway. For example, the complaint includes screenshots of online reviews of GP's facility warning that the stationary trucks are a "[t]raffic hazard" and are "extremely

---

presented. *See HNMC, Inc.*, 637 S.W.3d at 928. The court's holding that the defendant owed a duty under the circumstances did not turn on the plaintiff's status as an employee or a finding that the defendant exercised control over the road.

ORDER – PAGE 7

dangerous." Pl.'s First Am. Compl. ¶ 36. At the very least, further factual development is warranted to make a full assessment of the risk and its bearing on the existence or nonexistence of a breach. The Court declines to hold that stationary vehicles in an active traffic lane cannot constitute a dangerous condition as a matter of law.[3]

One case cited by GP, *Huebotter v. Diamond Shamrock Refining Co.*, deserves another word. 1999 WL 1244422 (Tex. App. — San Antonio 1999, no pet.) (unpub.). In the Court's view, that case is distinguishable despite its somewhat similar facts. In *Huebotter*, the state appellate court affirmed the trial court's grant of summary judgment because the defendant refinery "did not create a dangerous situation" when its loading and weighing procedures for trucks resulted in trucks waiting in line on the side of the road. *Id.* at *3. The accident giving rise to the case occurred when a truck exited the refinery and collided with the plaintiff's vehicle due to waiting trucks on both sides of the road obstructing the drivers' vision. *Id.* at *1. Unlike in this case, there was no indication in *Huebotter* that the defendant affirmatively instructed trucks to park anywhere, let alone in

---

[3] Specifically, GP argues that because parking a truck in traffic lanes is at times permitted by law, it is not "inherently dangerous." Mot. to Dismiss at 7–8. To support this argument, GP cites various regulations concerning the proper precautions drivers should take when stopping their vehicles along the roadway. *Id.* (citing 49 C.F.R. § 392.22 (regulation requiring drivers of stopped commercial vehicles to activate hazard warning signals and place warning devices to warn approaching drivers); TEX. TRANSP. CODE ANN. § 547.503(a) (same)). This argument is not persuasive. If stopping a vehicle on a roadway were not dangerous, there would not be a need for regulations establishing the proper safety precautions to be taken under such circumstances to prevent accidents. Additionally, the taking of safety precautions does not necessarily eliminate the danger. The level of danger posed by stopping a vehicle on the road — with or without taking safety precautions — cannot be ascertained from the pleadings and briefs before the Court on this motion.

ORDER – PAGE 8

an active traffic lane.  Accordingly, the Court is unpersuaded that *Huebotter* necessitates dismissal of De Luna's claims here.

Finally, the Court addresses GP's arguments related to De Luna's allegations that GP "controlled" Ghoston.  GP argues that: (1) the allegations that GP "controlled" Ghoston is a legal conclusion not entitled to the presumption of truth; and (2) GP cannot be held vicariously liable for Ghoston's negligence.  But the negligence theory advanced against GP in the complaint does not depend solely on Ghoston's alleged negligence.  *See* Pl.'s First Am. Compl. ¶ 40(a) (alleging GP negligently instructed and required delivery "drivers to line up on the feeder road . . . before entering the facility, and [to] park for long periods of time").  While De Luna does often argue in terms of "control," it is not clear at this stage that legal control is necessary for De Luna to establish GP's negligence here based on actions that caused the creation of a dangerous obstruction of the road.  Whether Ghoston's possible negligence (in parking on the road or failing to place warning devices) or a lack of legal control absolves GP of liability under these circumstances strikes the Court as primarily an issue of causation, not duty.

In sum, the Court agrees with De Luna that the cases do not establish a legal rule that totally forecloses liability for negligence on the facts pleaded here.  Negligence and the duty element are highly fact dependent.  *See HNMC, Inc.*, 637 S.W.3d at 934–36; *Hillis v. McCall*, 602 S.W.3d 436, 440, 440 n.5 (Tex. 2020) (noting that the existence of duty is to be determined from the facts surrounding the occurrence at issue, considering a variety of factors).  While there may ultimately be no breach of duty in this case, further factual development is warranted to make that determination.  Taking the well-pleaded facts in the

ORDER – PAGE 9

complaint as true and viewing them in a light favorable to De Luna, as Court must, De Luna has stated a plausible claim that GP is liable for negligence due to its creation of a dangerous condition on the roadway.  For all the reasons above, the Court denies the motion to dismiss.

## CONCLUSION

Because De Luna has pleaded facts sufficient to state a claim for negligence against GP, including on the element of duty, the Court denies the motion to dismiss for failure to state a claim.

Signed July 26, 2022.

David C. Godbey
United States District Judge